CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
REBECCA M. ABEL (Bar No. 298604)
(E-Mail: rebecca_abel@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JOSE CERVANTES LICEA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE CERVANTES LICEA, <br><br> Defendant. | Case No. 2:25-CR-602-MWC <br><br> **DEFENDANT'S SENTENCING POSITION PAPER; EXHIBITS A THROUGH I** <br><br> **Sentencing Date: January 30, 2026, at 10:00 a.m.** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................1

    A.    Objection: Zero-Point Offender Applies ......................................................1

    B.    Applying the § 3553(a) factors, a time served sentence is appropriate. ......5

        1.    Mr. Cervantes Licea is a devoted family man who stepped up when his family needed him most. ......................................................5

        2.    Mr. Cervantes Licea is a Devoted Husband and Father ....................7

        3.    Mr. Cervantes Licea is an Exceptionally Hard Worker with an Unblemished Employment Record......................................................8

        4.    Mr. Cervantes Licea Has Led a Law-Abiding Life ...........................9

        5.    This Offense Was an Isolated Act Motivated by Confusion and Loyalty to a Coworker .....................................................................10

        6.    Mr. Cervantes Licea Has Already Suffered Significant Consequences...................................................................................11

    C.    The Appropriate Sentence............................................................................12

III. CONCLUSION...................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Tanzin v. Tanvir*,
  141 S. Ct. 486 (2020)...................................................................................2

*United States v. Atkinson*,
  815 F. App'x 704 (4th Cir. 2020) (unpublished per curiam).........................2, 3, 5

*United States v. Kirilyuk*,
  29 F.4th 1128 (9th Cir. 2022).........................................................................2

*United States v. Pineda-Duarte*,
  933 F.3d 519 (6th Cir. 2019).......................................................................2, 4

*United States v. Yang*,
  No. CR 23-100 (JDB), 2024 WL 519962 (D.D.C. Feb. 9, 2024) .................4, 5

**Statutes**

18 U.S.C. § 111(a)(1)............................................................................................12

18 U.S.C. § 3553(a) ...................................................................................1, 5, 13

18 U.S.S.G. § 5B1.1...............................................................................................13

U.S.S.G. § 5D1.1(b)..............................................................................................13

**Other Authorities**

https://x.com/AGPamBondi/status/1956010229348413694 ................................13

https://x.com/USAttyEssayli/status/1948865784916443293 ................................14

Violence, Black's Law Dictionary (11th ed. 2019) .................................................2

Violence, Merriam Webster, https://www.merriam-
  webster.com/dictionary/violence.......................................................................2

## TABLES OF EXHIBITS

| Exhibit | Document | Filing |
|---------|----------|--------|
| A | Declaration of FPD Investigator Alejandro Villasenor | |
| B | Video of C.M. and Manuel De Jesus Aguas at Jack's Car Wash (obtained by FPD Investigator) | Manually Filed at Dkt. No. 43 |
| C | Video of Charged Conduct (produced by the government in discovery) | Manually Filed at Dkt. No. 43 |
| D | FPD Investigator Alejandro Villasenor's Memoranda of Interviews with Manuel De Jesus Aguas, dated July 14, 2025 and August 6, 2025 | |
| E | Video of Mr. Cervantes Licea's Arrest (produced by the government in discovery) | Manually Filed at Dkt. No. 43 |
| F | Letters from Mr. Cervantes Licea's Mom (at 2), Wife (at 8), and Four Siblings (translated from Spanish) | |
| G | Letters from Five Employment Supervisors and Coworkers | |
| H | Letters from Mr. Cervantes Licea's Pastor and Two Friends | |
| I | Letter from Mr. Cervantes Licea (translated from Spanish) | |

# I. INTRODUCTION

On a summer afternoon at a family-run car wash, an employee of 12 years, Jose Cervantes Licea, acted not out of malice but from a humane impulse—to shield a coworker from danger, to protect his coworker from the masked, armed men who were leading him away to an unmarked car. Mr. Cervantes Licea pushed an officer briefly in an effort to free his friend. No one was injured. The contact lasted seconds.

Mr. Cervantes Licea—an American citizen—has worked tirelessly at multiple jobs since age 14 to support his mother, four siblings, wife, and three-year-old daughter. A devout Catholic, he led a law-abiding life for his entire 31 years. After Mr. Cervantes Licea's father was "disappeared" in Mexico when he was 14 years old, he always dreamed of being able to bring his family to America. Due to his hard work and commitment, he fulfilled his dream and successfully petitioned for visas for his mother, siblings, and wife to legally immigrate to this country from Mexico.

Mr. Cervantes Licea's American dream was halted by his arrest and detention in this matter in June 2025. After a brutal, public arrest, five days in prison, and loss of income for his family, Mr. Cervantes Licea has already paid a real price for this minor act. The 14 days of confinement requested by the government would unduly stigmatize and penalize him and his family. The Probation Office agrees, no further jail time is warranted. (Dkt. Nos. 38, 40.) Mr. Cervantes Licea has taken full responsibility and expressed deep remorse. Taking into account the § 3553(a) factors, a five-day, time-served sentence is appropriate but not greater than necessary.

# II. ARGUMENT

## A.  Objection: Zero-Point Offender Applies

The PSR declined to apply a 2-level reduction under § 4C1.1, concluding that Mr. Cervantes Licea does not qualify for a Zero-Point Offender Reduction because he "use[d] violence." (PSR ¶¶ 18-20.) The PSR bases this conclusion on the fact that Mr.

Cervantes Licea "pushed C.M. and grabbed at his arm in attempt to free M.D." (*Id.* ¶ 20.)[1]

The defense objects to the refusal to apply the Zero-Point Offender Reduction because the facts of this case do not demonstrate that Mr. Cervantes Licea "use[d] violence," as required to exempt him from application of the two-level reduction at § 4C1.1. Neither § 4C1.1 nor other provisions in the Guidelines define the term "use violence." And the 9th Circuit has not interpreted the term as used here. Accordingly, the plain meaning of the term at the time of enactment controls. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020); *United States v. Kirilyuk*, 29 F.4th 1128, 1137 (9th Cir. 2022) ("In interpreting the Guidelines, we apply the ordinary tools of statutory interpretation and look to the plain meaning of its terms.").

Contemporary dictionaries define "violence" as "[t]he use of physical force, usu[ally] accompanied by fury, vehemence, or outrage; esp[ecially], physical force unlawfully exercised with the intent to harm," Violence, Black's Law Dictionary (11th ed. 2019), or as "the use of physical force so as to injure, abuse, damage, or destroy," Violence, Merriam Webster, https://www.merriam-webster.com/dictionary/violence. These definitions draw additional support from case law interpreting "violence" in similar contexts. *See, e.g.*, *United States v. Pineda-Duarte*, 933 F.3d 519, 523 (6th Cir. 2019) (defining "violence," as used in § 2D1.1(b)(2), as "acts where one uses physical force with the intent to injure"); *United States v. Atkinson*, 815 F. App'x 704, 708 (4th Cir. 2020) (unpublished per curiam) (same).

The facts of this case, supported by the videos appended as Exhibits B and C, demonstrate that Mr. Cervantes Licea did not "use violence" because his intent was not to injure or harm.

---

[1] The defense objects to the inclusion of facts other than those admitted when he pled guilty, including those at Paragraphs 5 n.1. The defense disputes the accuracy of these facts, which are not corroborated.

2

On June 20, 2025, Mr. Cervantes Licea was at work at Jack's Car Wash in Bell, California, where he had worked for over 12 years. (PSR ¶¶ 50-51.) At 2:35 p.m., two SUVs, one white, the other silver, pulled up into the car wash line behind customers whose cars were being cleaned and dried by Jack's workers in green hats. (Ex. C at 00:20-00:25.) Four men exited the SUVs. (*Id.* at 00:25-00:32.) None of them were in police uniforms. They were in plain clothes, baseball caps, with masks covering their faces. (*Id.* at 00:32-00:39.) C.M., the complainant in this case, approached a blue SUV being cleaned by Manuel De Jesus Aguas[2], a co-worker of Mr. Cervantes Licea who had worked at Jack's for 2 years. (Ex. B at 00:02-00:12; Ex. D, July 14, 2025 Interview of M.D., at 1) C.M. was wearing blue jeans, a black long sleeve shirt, black sneakers, a black baseball cap, a black balaclava—a mask that covered his entire face, leaving only his eyes exposed—dark sunglasses, and carrying a gun. (Ex. B at 00:02-00:12; Ex. D at 3.) The only marker of law enforcement was the word "POLICE" on his military vest. (Ex. B at 00:02-00:12.)

C.M. spoke to Mr. De Jesus Aguas in English, which he did not understand because he speaks only Spanish. (Ex. D at 2-3.) C.M. did not announce or introduce himself, nor did he show Mr. De Jesus Aguas a badge or identification. (*Id.* at 3-4.) Mr. De Jesus Aguas eventually figured out he was asking for his ID, which he did not have. (*Id.* at 3.) At that point, he was pulled out of the car. (*Id.*; Ex. B at 00:10-00:21.)

C.M. led Mr. De Jesus Aguas from the blue SUV he was cleaning to the unmarked silver SUV behind it. (Ex. C at 01:10-01:21.) Mr. De Jesus Aguas was afraid because he could not see anyone's faces and no one spoke to him in Spanish. (Ex. D at 4.) Mr. De Jesus Aguas was standing next to the unmarked SUV with C.M. holding onto his arms, when Mr. Cervantes Licea jogged toward him. (Ex. C at 01:19-

---

[2] As referenced in the joint plea statement and the PSR, M.D. is Manuel De Jesus Aguas. An investigator with the Office of the Federal Public Defender, Alejandro Villasenor, interviewed Mr. De Jesus Aguas by telephone on July 14, 2025 and August 6, 2025, while Mr. De Jesus Aguas in Mexico following his deportation just days after the incident. (Ex. A, Decl. of A. Villasenor, Ex. D, Memoranda of Interviews of Manuel De Jesus Aguas, at 2.).

3

01:22.) People were honking their horns, and customers and pedestrians were gathering. (Ex. B.)

In all the commotion, Mr. Cervantes Licea wanted to help Mr. De Jesus Aguas. (Ex. I at 2.) He had known him for two years and had taught him how to work at the car wash. (*Id.*) They were "an excellent team." (*Id.*) Mr. Cervantes Licea had watched the news and was aware of people being kidnapped from their community from ICE and from bounty hunters. (*Id.*) He wanted to help him. (*Id.*)

Mr. Cervantes Licea pushed C.M. in an attempt to free Mr. De Jesus Aguas. (PSR ¶ 20.) Mr. Cervantes Licea was attempting to defend Mr. De Jesus Aguas. (Ex. D at 4.) C.M. was not injured by the push. (PSR ¶ 5 n.1.)

Mr. De Jesus Aguas took off running, and C.M. chased after him. (Ex. C at 01:22-01:33.) He was apprehended within a minute. (*Id.* at 02:35.) It was not until after he was placed in the backseat of the silver SUV that an officer explained they were ICE and he would be deported. (Ex. D at 4.)

Three other plain clothes officers with masks covering their faces chased down and encircled Mr. Cervantes Licea. (Ex. E at 01:20-01:28.) They grabbed his arms, they jumped on him, they used their batons, and they pushed him to the ground. (*Id.* at 01:28-01:42.) More officers arrived, and they push him down onto the pavement in front of his coworkers and car wash customers with four officers placing their weight on his body. (*Id.* at 01:42-02:12.) With dozens of people watching, he is handcuffed, lifted up and escorted away from his workplace. (*Id.* at 02:12-03:02.)

Mr. Cervantes Licea admits he briefly made physical contact with C.M. when he pushed him away from Mr. De Jesus Aguas, but this contact was not made with an intent to harm. *See, e.g.*, *Pineda-Duarte*, 933 F.3d at 523 ("[r]eading 'violence' to include intentional acts of force designed to cause harm"). "The throughline of the definitions of 'violence' is a degree of aggressiveness that is not present in this case." *United States v. Yang*, No. CR 23-100 (JDB), 2024 WL 519962, at *1, 4 (D.D.C. Feb. 9, 2024) (applying Zero-Point Offender to a January 6 protestor convicted of, *inter alia*,

4

civil disorder and disorderly conduct, where he "briefly grabbed an officer's wrist" and "grabbed the baton" an officer was holding as the officer "fell backward"). Like in *Yang*, the sole instance "in which [Mr. Cervantes Licea] made physical contact with [the] officer [was] brief and reactive." *Id.* at *4. Ultimately, like in *Yang*, Mr. Cervantes Licea did not use physical force with the intent to injure C.M. Rather, his intent was to protect his coworker, Mr. De Jesus Aguas, during a chaotic situation caused by masked men who appeared unannounced at his workplace. *See United States v. Atkinson*, 815 F. App'x 704, 708 (4th Cir. 2020) ("'[V]iolence' encompasses acts where one uses physical force with the intent to injure . . . ." (quoting *Pineda-Duarte*).) Thus, the 2-level reduction for Zero-Point Offender applies.

With the application of the 2-level reduction, the total offense level is 9. With a criminal history category of I, the Guidelines range is 4-10 months.

**B.    Applying the § 3553(a) factors, a time served sentence is appropriate.**

Mr. Cervantes Licea is a thirty-one-year-old United States citizen born in Hayward, California. (PSR ¶ 49.) When he was six months old, his family returned to Michoacán, Mexico, where he was raised in a small town. (Ex. H, Letter from mom, Leticia Licea Lopez at 1.) He was baptized, confirmed, and received his first communion in the Catholic faith—values that continue to guide him today. (Ex. I, Letter from Jose Cervantes Licea at 3; Ex. H at 1.) He attended school in Mexico through secondary school, where he was known as a boy who "always wanted to help his dad and me." (Ex. H at 1.)

**1.    Mr. Cervantes Licea is a devoted family man who stepped up when his family needed him most.**

Jose Cervantes Licea is a thirty-one-year-old United States citizen, born in Hayward, California. (PSR ¶ 32.) When he was six months old, his family returned to Pajacuaran, Michoacan, Mexico, a small town where he spent his childhood and teenage years. (Ex. F, Letter from mother, Leticia Licea Lopez at 2.) He was raised by his mother and father, along with his four siblings. (PSR ¶¶ 35, 38.) He was baptized,

5

confirmed, and received his first communion in the Catholic faith—values that continue to guide him today. (*Id.*; Ex. I, Letter from Jose Cervantes Licea at 3.)

When he was fourteen years old, Mr. Cervantes Licea's life changed dramatically because his father disappeared. (PSR ¶ 38; Ex. F at 2; Ex. I at 3.) His father left to work in Guerrero because he was convinced there was a lucrative job there. (PSR ¶ 38.) He never returned home. (*Id.*) Mr. Cervantes Licea's mother filed a missing person's report and requested that officials at several levels of government investigate, but they still have no information. (*Id.*) He has been missing for seventeen years. (Ex. I at 3.) This tragedy left Mr. Cervantes Licea's mother, Leticia Licea Lopez, in poverty with four children to support alone. (Ex. F at 2-3.)

As Mr. Cervantes Licea explains, "[m]y dad's disappearance was very painful, it affected us too much and since I was one of the older siblings I had to take charge of my mom and my siblings." (Ex. I at 3.) At an age when most teenagers are focused on school and friends, Mr. Cervantes Licea—the oldest boy in the family—became the man of the house, working in construction while attending secondary school to support his mother and siblings. (Ex. H at 1-2; Ex. I at 3.) As his brother explains, "[e]ven though he was still a boy, after my father's disappearance was confirmed, he took charge of me and my siblings." (Ex. F at 22.)

A few years later, Mr. Cervantes Licea's family sent him back to the United States—the country of his birth—so he could continue his education and have better opportunities. (Ex. F at 2.) Despite the pain of separation, his mother allowed him to leave Mexico, hoping for a better future for her son. (*Id.*) Once in the United States, Mr. Cervantes Licea enrolled in high school while working weekends at a car wash, sending money back to Mexico to support his mother and siblings so they could continue their education. (Ex. F at 2-3; Ex. I at 3.)

Throughout this time, he stayed connected to his family in Mexico. Every Christmas, he would return to visit, bringing clothes, shoes, and school supplies for his siblings. (Ex. F at 3, 13.) He worked multiple jobs throughout his teens and twenties

6

to support his family in Mexico. (PSR ¶¶ 55-58.) His younger brother, Francisco Javier Cervantes, describes Mr. Cervantes Licea as having assumed "the position of the father we never had. For us, his siblings, and for mom, he is strong." (Ex. F at 13.)

His dream was always to petition for visas for his mother and siblings once he turned twenty-one so they could reunite in the United States. (Ex. I at 3.) Thanks to his hard work and determination, that dream came true—his entire family is now living together in this country. (*Id.*) His mother writes: "Thanks to him we are living a different life in this country than what we lived in Mexico." (*Id.*)

### 2. Mr. Cervantes Licea is a Devoted Husband and Father

Mr. Cervantes Licea is married to Vanessa del Carmen Fajardo Cerna, whom he has known since they were teenagers in their hometown in Mexico. (Ex. F at 8.) They began dating in January 2019 and maintained a long-distance relationship for two years, with Mr. Cervantes Licea traveling to Mexico to visit whenever possible. (*Id.*) In 2021, they were married in the church and were legally married in the United States in April 2022. (*Id.*) In October 2022, they welcomed their daughter, Natalie, who is now three years old. (*Id.*; PSR ¶ 37.) Mr. Cervantes Licea also successfully petitioned for his wife to immigrate to the United States so the family he built could stay together. (Ex. F at 8.)

His wife describes him as "responsible, attentive, loving, romantic, protective and respectful" as a husband, and "even better as a father." (*Id.*) She writes that he is their daughter's "superhero" and that they "are very close emotionally and physically." (*Id.*) Mr. Cervantes Licea is very present in his daughter's life—she does not go to sleep until he gives her a hug, a kiss, and her goodnight blessing. (Ex. I at 2.)

Mr. Cervantes Licea's wife attests that he "is someone who does not get into trouble, he has values and education, and he knows to accept responsibility when he is wrong and face those circumstances." (Ex. F at 9.) She describes him as "a man of honor, of good values, human as well as civic values" and "a good person for society and for our family." (*Id.*) His mother echoes these sentiments, describing her son as

"hardworking, home-loving young man without vices, a dreamer and with goals in life." (Ex. F at 1.) She explains that "he goes from work to home" and attends mass every Sunday with his family. (*Id.*) The family's pastor at St. Lucy's Catholic Church, who also submitted a letter, further attests to their weekly attendance at mass and to their being "good Christians who live their faith" and "respect the law and this great country." (Ex. H at 2.)

### 3. Mr. Cervantes Licea is an Exceptionally Hard Worker with an Unblemished Employment Record

Throughout his adult life, Mr. Cervantes Licea has demonstrated an extraordinary work ethic and commitment to supporting himself and his family. He has worked continuously since he was a teenager, maintaining steady employment to support his mother, siblings, wife, and child. (PSR ¶¶ 50-58.) In nearly every letter submitted to this Court, his family, friends, coworkers, and bosses describe Mr. Cervantes Licea as "hardworking." (Ex. F at 8, 13; Ex. G at 3, 4, 5, 6.)

Mr. Cervantes Licea began working at Jack's Car Wash—the site of the charged incident—when he was just eighteen years old. (PSR ¶ 58.) He worked there for over twelve years, becoming one of the most experienced and dedicated employees. (Ex. G at 2.) His manager at Jack's, Rosana Martinez, has known him for the entire twelve years and describes him as "an incredible employee" and "a respectful loving person." (*Id.*) Ms. Martinez notes that Mr. Cervantes Licea went beyond his regular duties, helping the business after hours with repairs and maintenance. (*Id.*) She believes that on the day of the incident, "he was caring for his fellow co-workers because he does come from a family of immigrants and they are all trying to live the American dream." (*Id.*) Mr. Cervantes Licea also built a close relationship with the owner of the car wash, who describes him as a "respectful honest man," who has always shown hard working skills[,] determination[,] and perseverance." (Ex. G at 3.) During his twelve years at the car wash, Mr. Cervantes Licea trained new employees, including Manuel De Jesus

8

Aguas, his co-worker, who ICE was arresting on the date of the charged incident. (Ex. I at 2.)

In addition to his long tenure at Jack's Car Wash, Mr. Cervantes Licea worked for eight years at Perfection Machine and Tool Works, a family-owned manufacturing business that operated in Los Angeles for 107 years before closing in 2024. (Ex. G at 2; PSR ¶¶ 52, 58.) Karen Hix, from the owning family, writes that if the company had not closed, Mr. Cervantes Licea "would still have a position within our company." (Ex. G at 4.) Ms. Hix describes him as "an exemplary employee, smart, extremely capable, hard-working, and never late." (*Id.*) Beyond his technical abilities, she notes that he "always had a smile on his face and was kind and respectful." (*Id.*) Juan De Simon, who was Mr. Cervantes Licea's immediate supervisor for six years trusted him so much that he personally recommended him to his landlord for the apartment where Mr. Cervantes Licea and his family currently live. (Ex. G at 5.) Mr. De Simon explains Mr. Cervantes Licea "is an expectation [sic]" because "he has shown time and time again to be a good and honest person who does not look for trouble. . . . Jose is a good man and a good friend. He is one of the most moral based men that I have met." (*Id.*)

Throughout his life, Mr. Cervantes Licea has " always had a job thank God." (Ex. I at 3.) Unfortunately, the Jack's Car Wash location recently closed after 74 years because the property lease expired, and Mr. Cervantes Licea was given very little notice. (*Id.*) He is actively searching for new employment, filling out applications daily. (*Id.*; PSR ¶ 51.)

### 4. Mr. Cervantes Licea Has Led a Law-Abiding Life

Prior to this offense, Mr. Cervantes Licea had absolutely no criminal conduct. (PSR ¶¶ 24-29.) Multiple letters from friends and community members emphasize his clean record and law-abiding character. (Ex. G at 6 ("He exemplifies what it means to be a law-abiding and responsible citizen."); Ex. H at 3, 4.)

He has no history of drug or alcohol use, nor any mental health struggles. (PSR ¶¶ 44-45.) He has been flawless in his compliance with his conditions of pretrial

9

1  release for the last five months.  (PSR ¶ 3.)  As countless letters attest, Mr. Cervantes
2  Licea has "no vices." (Ex. F at 2, 8, 19.)

### 5.     This Offense Was an Isolated Act Motivated by Confusion and Loyalty to a Coworker

In the weeks and days leading up to June 20, 2025, the immigrant community in Los Angeles was experiencing widespread fear and uncertainty about ICE enforcement actions.  (Ex. I at 2.)  Mr. Cervantes Licea—a United State citizen of Mexican heritage who helped his entire family immigrate from Mexico—watched the news daily, seeing reports of people being kidnapped from the community with no one knowing where they were taken.  (*Id.*)  There was talk of abductions and bounty hunters targeting people with brown skin like his.  (*Id.*)

In this environment, Mr. Cervantes Licea went to work at Jack's Car Wash on June 20, 2025, as he had done on countless days over the prior 12 years.  He was wearing Jack's signature green hat, gloves, and a mask to protect himself from the harsh chemical, and he was helping to wash customer cars and train new employees.  That afternoon was like no other.  Unidentified individuals in plain clothes, with their faces completely covered by balaclavas leaving only their eyes visible, arrived at his workplace in unmarked vehicles.  There was chaos and confusion.  These individuals did not announce themselves, did not show badges, and spoke only English.

When Mr. Cervantes Licea saw masked men in plain clothes restraining and leading away his coworker and friend Manuel De Jesus Aguas—someone he had trained and worked with closely for two years—his instinct was to help.  (Ex. I at 2.)  He pushed C.M. off of Mr. De Jesus Aguas, allowing him to momentarily get free from the masked, unidentified man putting him in the back of the unmarked SUV.  (PSR ¶ 5.)  No one was injured.  (PSR ¶ 5 n.1.)  The entire physical contact lasted only seconds.  (Ex. B at 01:24-01:30.)

Mr. Cervantes Licea deeply regrets his actions.  His letter to the Court demonstrates genuine remorse:  "I Jose Cervantes Licea, first, I want to apologize for

10

what happened. It was never my intention to harm anyone. My intention was always to help my buddy.... I deeply and honestly apologize again for the offense I committed." (*Id.*)  Despite the difficult circumstances, Mr. Cervantes Licea quickly took responsibility for his actions, pleading guilty within weeks of the offense. (PSR ¶ 1.)

### 6. Mr. Cervantes Licea Has Already Suffered Significant Consequences

The impact of his arrest and prosecution has been devastating for Mr. Cervantes Licea and his family.  On the day of his arrest, a hot summer day, officers threw Mr. Cervantes Licea to the ground and pressed his head against the hot pavement with their knees and hands. (Ex. I at 2.) His face was burning, but when he tried to lift his head because of the pain, they kept pushing him down. (*Id.*; *see also* Ex. E at 01:20-01:28.)

He was handcuffed for seven hours without being told what was happening or where he was being taken. (*Id.*)  He was not allowed a single phone call to notify his family. (*Id.*)  He was moved from vehicle to vehicle and subjected to "mockery and racism" before finally being taken to MDC. (*Id.*)

He spent five days in federal custody before being taken to Court. (Ex. I at 2-3; Dkt. No. 6; PSR at pg. 1.)  During those five days, he had no contact with his family or with an attorney.  (Ex. I at 2-3; Dkt. No. 8.)  His wife and mother frantically tried to find out where he was, going to federal buildings to ask about him, but received no answers.  (*Id.* at 3; Ex. F at 3.)  His mother describes "the anxiety, desperation, and worry and cry and great pain for a mother not knowing about her son."  (Ex. F at 3.)

The separation from his daughter was particularly traumatic for Mr. Cervantes Licea.  (Ex. I at 2.)  He spent those days "thinking a lot about my 3-year-old daughter, thinking that she would need me because she is very close to me." (*Id.*)  The reunion was painful—at first, Natalie would not come near him, and when she finally did, she was crying, which "broke [his] heart." (*Id.* at 2.)

The financial impact has also been severe.  Mr. Cervantes Licea missed three weeks of work immediately following his arrest, earning no money during that time.

1 (*Id.* at 3.) When he was finally released, the car wash had lost employees due to the
2 raids and he had to wait another week before he could return to work. (*Id.*) The trauma
3 of being arrested at his workplace continued to affect him, returning each day to the
4 location where he was violently taken down and embarrassed in front of customers and
5 coworkers, reliving that experience. (*Id.*; Ex. E at 01:42-02:12.)
6    His mother asks the Court to "consider all those traumas he went through those []
7 days in jail. It impacted him very much and to see himself in the news on TV how he
8 was thrown onto the floor and how they jumped on him as if he were a dangerous
9 criminal." (Ex. F at 3.) For the second-long contact with C.M., Mr. Cervantes Licea
10 was charged with felony assault on a federal officer in violation of 18 U.S.C.
11 § 111(a)(1). (Dkt. Nos. 1.) Mr. Cervantes Licea ultimately pled guilty to misdemeanor
12 assault on a federal officer. (Dkt. Nos. 23, 37.) Because there is no expungement in
13 federal court, this conviction for misdemeanor assault will remain on his criminal
14 record for the rest of his life. For a one-second interaction where Mr. Cervantes Licea
15 pushed a masked man away from his coworker and friend, he will face the predictable
16 consequences that such a conviction has on an otherwise law-abiding individual:
17 difficulty securing employment and future housing, and public embarrassment and
18 shame. Mr. Cervantes Licea has been punished enough: the embarrassment of the
19 arrest, the emasculating take down in front of his boss, coworkers, and the entire world
20 captured on TV, the physical violence inflicted on him, the fear and anxiety of not
21 knowing his fate for 7 hours while being moved from one unmarked vehicle to another,
22 and the terror of being in federal custody for five days with no access to his family.

23 **C.    The Appropriate Sentence**
24    A time served sentence is sufficient but not greater than necessary. As discussed,
25 the conduct of conviction is minor, caused no harm, and was an aberration for Mr.
26 Cervantes Licea. Moments after the conduct, nearly 10 Border Patrol agents arrested
27 Mr. Cervantes Licea, pulling him out of work, taking him to the ground, holding him
28 down by his neck, placing their weight on him, and handcuffing him in front of dozens

of coworkers, customers, and cameras.  (Ex. E at 01:20-03:02.)  He was detained for five days in federal custody, awaiting release on bond.  Because of that arrest, Mr. Cervantes Licea missed weeks of work and crucial income for his family, he was separated from his three-year-old daughter, and his whereabouts were unknown to his family—a tragic reminder of his father's disappearance.  For the last five months, Mr. Cervantes Licea been subject to monitoring by Pretrial Services, which he has completed flawlessly, leading to unanimous agreement to remove the location monitoring condition.  (Dkt. Nos. 28, 30.)

      The arrest, prosecution, conviction, give days of jail time, and loss of income are more than a sufficient sanction for the minor conduct charged in this case.  Any further sanction—such as 14 days of custody, 2 months of supervised release, or 1 year of probation suggested by the government or Probation—are unnecessary.  The 2025 version of the Guidelines no longer recommends that the Court reflexively impose supervision.  Instead, a term of supervision should only be imposed "when warranted by an individualized assessment of the need for supervision," U.S.S.G. § 5D1.1(b), and a consideration of the factors in 18 U.S.C. § 3553(a), U.S.S.G. § 5B1.1 n.3.  Mr. Cervantes Licea has demonstrated both before and since the incident in this case that he has no trouble abiding by the law and poses no risk to himself or to society.  Supervision wastes valuable government resources, which are better spent on those who need assistance from the Probation Office.  Either custody or supervision will impede his ability to obtain new employment to support his wife and daughter.  He has not and will not have any further interaction with any law enforcement due to the fear this case has placed on him.

      The government has chosen to charge every touch of a federal officer as an assault.  This prosecution is an example of the Unites States Attorney's Office carrying out Attorney General Pam Bondi's dictate: "If you touch any law enforcement officer, we will come after you."  https://x.com/AGPamBondi/status/1956010229348413694.  And, First Assistant United States Attorney Bill Essayli—the current leader of the

13

Central District of California's prosecutor office—"can't be anymore [sic] clear. If anyone touches our agents or gets in our way, you will be arrested and charged with a federal crime." https://x.com/USAttyEssayli/status/1948865784916443293.

      Mr. Cervantes Licea is a victim of this overzealous and unjustifiable policy.  The policy has had its desired effect: it has deterred a law-abiding United States citizen—and anyone like him—from protecting a friend and coworker from masked, armed, plain-clothed men.  Neither the defense nor the Court can change this policy.  Neither the defense nor the Court can give Mr. Cervantes Licea faith in his country again.  But what the defense can do is ask this Court to acknowledge that this offense is not like others this Court sees.  It is a minor touching that caused no harm and that at any other time in the modern history of this country would never have happened, let alone been charged.  But because it has been charged, and because it must receive a sentence, the defense asks it be given the sentence it deserves: time served.

### III. CONCLUSION

      The defense requests a sentence of time served with no supervision to follow.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  Januayr 17, 2026      By  /s/ Rebecca M. Abel
      REBECCA M. ABEL
      Deputy Federal Public Defender
      Attorney for JOSE CERVANTES LICEA

14

# PROOF OF SERVICE

I, Patricia Zepeda, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No. (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **DEFENDANT'S SENTENCING POSITION PAPER, EXHIBITS A THROUGH I** on the following individual(s) by:

[ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[ ] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[X] Email via addressed as follows:

**USPO Adnan Chaundry**
**Email:**
**Adnan_Chaudhry@cacp.uscourts.gov**

This proof of service is executed at Los Angeles, California, on January 17, 2026.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Patricia Zepeda
Patricia Zepeda